### BRAINERD *against* COWDREY and others.

The testator directed his lawful debts to be paid, estimating his cotton goods about enough for that purpose. He afterwards directed, that two notes, due to the *East-Haddam* bank, and secured by his bank stock, should be paid, by his executor, so far as might be, consistently with his will; and gave the use of such bank stock to *B* for life. He then gave all the rest of his property, real and personal, not necessary, or taken to pay his lawful debts, to *C* and her son *L*;—adding this clause—" it being understood, that *C* shall have exclusively the dwelling-house where she now lives, so far as I am owner of the same; and after the death of *C*, the factory estate shall be wholly the estate of *L*, and his heirs, forever." The cotton goods and other personal property, aside from the bank stock, were insufficient to pay the debts. Held, that the bank stock, though specifically bequeathed, was liable to be sold for the payment of debts, in preference to the real estate so devised. [By two judges, including the Chief Justice, against two, the other not sitting.]

THIS was an appeal from a decree of the court of probate for the probate district of *East-Haddam*, taken by *Hannah Brainerd*, to whom a specific legacy was given, by the last will and testament of *Epaphroditus Champion*, deceased. The decree was passed on the 24th of *January*, 1844. It authorized the executor of said last will and testament, to sell so much of the personal estate of the deceased, specifically bequeathed, as would raise the sum of 1184 dollars, 53 cents, to pay debts and charges against the estate; the personal estate so taken, to be in proportion to the amount bequeathed to each of the special legatees. Those parts of the will which are material here, are stated in the former case between these parties, *ante*, 2, 3.

At the time of passing said decree of probate, the personal estate of the deceased, exclusively of the articles so specifically bequeathed, *viz.* the appellant's life estate in the bank stock, the furniture, &c. had been exhausted, by the executor, in the payment of debts and charges against said estate, leaving the amount of 1184 dollars, 53 cents,—the debt referred to in the will due to the *East-Haddam Bank*,—still unpaid and unprovided for. The appellant claimed, that the " factory estate," mentioned in the will, consisting of lands and buildings thereon, was liable to pay said debts and charges, according to the provisions of the will; it being of much greater value than said balance of debts and charges. She therefore insisted, that said decree of probate was unnecessary, con-

trary to law, and unjust, being inconsistent with her rights under the will; and that it should be reversed and set aside.

The case was reserved for the consideration and advice of this court.

*Hungerford* and *McCurdy*, for the appellant, contended, 1. That the legacy of the bank stock given to her, was a specific legacy. *Brainerd* v. *Cowdrey, ante,* 6, 7.

2. That the question whether the real estate is to be onerated with the payment of debts, where there are specific bequests, is a mere question of *intention* on the part of the testator; and if, upon the face of the will, such appears to be the intention, it must be so charged; and if such intention is fairly implied, it is all that is necessary, express words not being requisite. *Haslewood* v. *Pope,* 3 *P. Wms.* 325. *Bamfield* v. *Wyndham, Prec. Ch.* 101. *Wainwright* v. *Bendlowes,* 2 *Vern.* 718. *Stapleton* v. *Colvile, Ca. temp. Talbot,* 202. *Whaley* v. *Cox,* 2 *Eq. Ca. Abr.* 549. *Walker* v. *Jackson,* 2 *Atk.* 624. *Holliday* v. *Bowman,* cited 1 *Bro. Ch. R.* 145. *Burton* v. *Knowlton,* 3 *Ves.* 107. *Bootle* v. *Blundell,* 1 *Meriv.* 193. wherein the cases are reviewed. *Hancox* v. *Abbey,* 11 *Ves.* 186.

3. That in this case, an intention to charge the real estate with the payment of debts, sufficiently appears. *Tompkins* v. *Tompkins, Prec. Ch.* 397. *Trott* v. *Vernon, Id.* 430. *Williams* v. *Chitty,* 3 *Ves.* 545. 551, 2. *Shallcross* v. *Finden, Id.* 738. 1 *Rop. Leg.* 448.

4. That in this case, it appears, not only that the real estate is charged, but that the personal estate—*i. e.* the bank stock—is expressly exonerated, except as to the debt of *Hannah Brainerd* herself. In the first place, the testator, after making several specific bequests, to the amount, according to the estimate in his will, of 6000 or 7000 dollars, gives to *Hannah Brainerd* his *East-Haddam Bank* stock, (which is pledged for his debts,) for life. Secondly, he directs his executor to pay off the debts for which the stock is thus pledged, *so far as might be, consistently with his will.* Thirdly, he charges the stock distinctly with Miss *Brainerd's* debt. Fourthly, he then charges both his *personal* and *real* estate—all of it— which had not before been disposed of, with his debts, and gives to the residuary devisees and legatees, all the rest of his

*Middlesex,*
*July, 1844.*

Brainerd
*v.*
Cowdrey

property, real and personal, not necessary or taken to pay his lawful debts, to Mrs. *Cowdrey* and her son *Loren.* This constitutes a direct charge upon both the real and personal estate; and they take nothing under this clause beyond what remains after the debts are paid. Fifthly, it is obvious from the will, that the testator intended, that his debts should be paid out of these two funds, (if they are to be called two funds,) *viz.* the cotton goods, and what is embraced in the residuary clause, which indeed covers the whole property, except what was specifically bequeathed, preceding the clause which contains a specific bequest of so much of the bank stock as was necessary to pay the debt to Miss *Brainerd,* and the life use of the balance.

*Bulkley* and *Palmer,* for the appellees, contended, 1. That the personal estate constitutes the fund first to be applied in payment of debts and legacies; and that, until such estate is exhausted, no resort can be had to the real estate, unless it is expressly charged by the testator. *Livingston* exr. v. *Livingston,* 3 *Johns. Ch. R.* 148. 153. *Livingston* & al. v. *Newkirk* & ux. *Id.* 312. 319. *Hanby* v. *Roberts, Amb.* 128. *Forrester* v. Lord *Leigh, Id.* 172. *Clifton* v. *Burt,* 1 *P. Wms.* 178. *Haslewood* v. *Pope,* 3 *P. Wms.* 325. *Burton* v. *Knowlton,* 3 *Ves.* 107. *Brummel* v. *Prothero, Id.* 111. *Rogers* v. *Rogers,* 3 *Wend.* 518, 19. S. C. before the Chancellor, 1 *Paige,* 503. Lord *Inchiquin* v. *O'Brien,* 1 *Wils.* 82.

2. That in this case, it is not sufficient to exempt the bank stock from the operation of the general rule, that it was *specifically given* to the appellant. It was as truly the intention of the testator to give the dwelling-house and factory estate entire, to Mrs. *Cowdrey* and her son *Loren,* as to give the bank stock to Miss *Brainerd:* and the former were given as *specifically* as the latter. *Gridley* & ux. v. *Andrews,* 8 *Conn. R.* 1. *Swift* v. *Edson* & al. 5 *Conn. R.* 581.

WILLIAMS, Ch. J. A case under the same will and between the same parties, was before the court, at the last term; (*ante,* 1.) and the sales of personal property, made in consequence of that decree, being insufficient to pay the debts, the court of probate has ordered a sale of personal property spe-

cifically bequeathed. To this the appellant objects, because the factory estate ought first to be sold, under the will, to pay debts.

We have already decided, that the legacy to the appellant is a specific legacy; and such legacies are not to be taken for payment of debts, unless for want of a more appropriate fund.

The claim is here, that a fund is provided for that purpose; that the real estate is charged with the debts, in that clause of the will, by which he gives all the rest of his property, real and personal, not necessary or taken to pay his lawful debts, to Mrs. *Cowdrey* and her son. That these words, by fair implication, may constitute a charge of debts upon the real estate, cannot be doubted ; but as the implication is founded upon the supposed intention of the testator, and as that intention is to be our guide, it may be rebutted, by other words in the same instrument. We must, therefore, compare the various parts of this will with each other, and collect, if we can, what we may fairly believe the testator intended.

In his first will, he directs that his debts shall be paid from the avails of his cotton goods, supposing there was about enough for that purpose. In an additional instrument, made the next day, he directs, that certain notes given for, and secured by bank stock, which constituted more than half his debts, should be paid, by his executor or administrator, " *so far as may be consistently with my will.*" All the rest of his property, real and personal, not necessary or taken to pay his lawful debts, he gives and disposes of to Mrs. *Cowdrey* and her son *Loren*. Were this all, the case would fall within the general rule, that where a charge is made on real estate, and then the remainder and residue of all the property given, the remainder-man must take, subject to the charge. But here is something more said about part of this remainder; "it being understood, that Mrs. *Cowdrey* shall have exclusively the dwelling-house where she now lives, so far as I am owner of the same ; and after the death of the said *Sarah*, the factory estate shall be wholly the estate of said *Loren* and his heirs forever, if he have heirs of his body," &c. Taken together, it reads, his debts are to be paid from his cottons, if, as he believes, they are enough. But as it may prove otherwise, certain of his debts are to be paid, not by the stock pledged

*Middlesex,*
*July, 1844.*
_____

Brainerd
*v.*
Cowdrey.

to secure them, but by his executor or administrator, so far as may be consistently with his will; and the rest of his property, real and personal, not necessary to pay his lawful debts, he gives to Mrs. *Cowdrey* and her son, she to have the dwelling-house in which she lives exclusively, and after her death, the factory estate to be wholly her son's and the heirs of his body. Can any one doubt, that by the language used, he intended Mrs. *Cowdrey* should have the dwelling-house in which she resided, as her own, independent of any lien? Is not this as manifest as that he intended Miss *Brainerd* should have the bank stock? Is it then consistent with his intention, as manifested in his will, that this house, or any part of it, should be sold to pay the stock debt? But the executor was to pay that debt, and from the real estate, if consistent with his will. But when he afterwards provided a home for Mrs. *Cowdrey*, could he have thought it consistent with this arrangement, that she might be turned out of it, to pay the bank debt? We ought not so to construe this will. But such a construction must be given as will quiet Mrs. *Cowdrey* in the enjoyment of this house, as well as Miss *Brainerd* in the use of this stock, thus giving weight to every clause of the will in relation to this subject.

It is true, that in the former case, upon the same will, it was said, that the clause in the will devising the factory estate to *Loren*, was not to enlarge the estate of the mother, but to direct how what the devisor understood would be received under the will, should be divided between them. We see nothing in that inconsistent with the idea now advanced, that we must look at every part of the will to gather the intent of the testator.

In the former case, the court do not discuss the question now made; but it is apparent, if the ground now taken had been then supposed to be tenable, the argument upon the question whether the machinery in the factory was liable to be taken as personal property, was entirely unnecessary, not to say frivolous; for if the factory itself could be taken to pay debts, the goods or machinery in it certainly could be.

We think, therefore, that upon the facts before us, the decree must be affirmed.

HINMAN, J. was of the same opinion.

CHURCH, J. dissented. He remarked as follows. There are certain well known principles applicable to cases of this character, which cannot be mistaken, and will not be disputed. 1. If there be no controuling direction in a will, personal property shall be expended in the payment of debts and legacies, before real estate can be taken. 2. If personal estate be specifically bequeathed, and real estate be devised generally, or has descended to the heir at law as intestate estate, such real estate shall be taken for the payment of debts, to the relief of the specific legacies. 3. If both personal and real estate be specifically devised, the personal estate shall be first exhausted.

By a specific legacy or devise, it is not meant merely, that the property given is particularly described ; but also, that the testator *intended to separate it* from the mass of his estate, for the benefit of the legatee or devisee.

The bank stock, bequeathed, by this will, to Miss *Brainerd*, the appellant, as we have heretofore decided, was a specific legacy. *Ante*, 1. 6, 7. And the question now is, whether the executor of Mr. *Champion* has a right to appropriate this legacy to the payment of the debts, before he resorts to the real estate, which, by a subsequent provision of the will, is devised to Mrs. *Cowdrey* and her son ?

It is very evident, that the testator intended that his debts should be paid from the avails of his cotton goods, if they proved sufficient for that purpose. But he foresaw the possibility that this fund would fail.

After having, in the first place, given directions for the payment of his debts, he goes on to make a disposition of certain articles of personal estate. Then, by a codicil, dated *July* 3d, 1841, he gives to Miss *Brainerd* the bank stock in question, in payment and discharge of his indebtedness to her, and the use of the balance of it, if any, for her life. But he had yet other property, both real and personal, of which he had made no disposition. And as to this, remembering, as he had before suggested, that his cotton goods might not prove of sufficient value to pay all his debts, he charges this property, which he is now about to dispose of, with the payment of the debts which might remain, by this language, viz. " All the rest of my property, both real and personal, *not necessary or*

*Middlesex,*
*July, 1844.*
——————
Brainerd
*v.*
Cowdrey.

*taken* to pay my lawful debts, I give and dispose of to Mrs. *Sarah Cowdrey* and her son *Loren,* &c." I think this is a clear direction that the specific legacies, before given, should not be incumbered with debts ; but that this *residuum,* thus given to Mrs. *Cowdrey* and her son, should constitute the fund from which they should be paid.

But it is said, that this real estate was specifically devised ; and therefore, according to one of the principles before suggested, that the bank stock, though a specific legacy, is first to be taken for the payment of these debts. I think this is a mistaken view of the will. Aside from the fact before stated, that this *residuum* is directly charged with the payment of the remaining debts, and therefore, is to come to the relief of the specific legacies, I feel very clear, that here is no specific devise to Mrs. *Cowdrey* and her son. It is a general and undefined disposition of the remainder of the estate, both real and personal—that *residuum* of which the testator spoke, when bequeathing the remainder of the bank stock, after the death of the legatee. It is true, the testator supposed, that the real estate belonging to this *residuum,* or some part of it, would yet remain, after all his debts were satisfied, which he had charged upon it ; and this he distributed between his residuary devisees, by directing that the mother should have the dwelling-house, and the son the factory estate, after her death ; but this direction does not constitute this devise, specific.

It is also said, because the testator directed, that the notes secured upon the bank stock should be paid, by his executors, so far as might be, consistently with his will, that this in some way shows, that the bank stock was not to be protected from the charge of paying the debts. I cannot comprehend how this can be. These notes were debts, which, consistently with the will, could and ought as well be paid from the avails of the cotton goods, or from the *residuum* of the estate, as any other debts. Indeed, I think the testator, by this arrangement, still more clearly intended, that the bank stock should not be taken for the payment of debts, and that the legatee should be certain to have it, unembarrassed by any such call. *Livingston* v. *Newkirk, 3 Johns. Ch. R.* 312. *Rogers* v. *Rogers,* 1 *Paige,* 188.

I think the decree of probate should be reversed.

STORRS, J. was of the same opinion.

WAITE, J. having been concerned in the settlement of the estate, gave no opinion.

Decree of probate affirmed.